Charles **DAHLBY** and George **Bailey** d/b/a **Far North Traders, Inc.,** Appellants,

v.

Vincent **GUZZARDI,** Appellee.

No. S–1997.

Supreme Court of Alaska.

Oct. 21, 1988.

As Amended Nov. 9, 1988.

---

224

Thomas R. Wickwire, Fairbanks, for appellants.

Paul D. Stockler and Dan Cadra, Larry L. Caudle & Associates, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

### FACTS AND PROCEDURE

Appellee, Vincent Guzzardi, obtained a judgment against appellants, Charles Dahlby and George Bailey (hereinafter Dahlby). A writ of execution was issued by the trial court for $20,391, the amount of the judgment plus accrued interest.

Guzzardi hired a process server, David Chausse, who, after unsuccessfully attempting to satisfy the judgment by levying against some of the appellants' bank accounts, levied and seized the entire inventory of Dahlby's antique furniture business, Far North Traders, Inc. The inventory, however, was subject to a prior lien by the First National Bank of Fairbanks.

After Guzzardi seized the inventory, the bank declared its note in default. The bank's commercial loan officer wrote to Guzzardi advising him that the bank was in a first priority secured position with respect to the inventory that had been seized. The bank demanded either full payment of the loan or surrender of the collateral. Guzzardi tendered full payment with a personal check for $9,633.

After the seizure of the inventory, Guzzardi and Dahlby entered into a stipulation. The parties agreed that the sale of the inventory was to be conducted by a private auctioneer rather than Chausse. The parties also agreed that the auctioneer would be paid ten percent of the gross proceeds of the sale rather than the normal amount a process server would receive. Dahlby also agreed to pay Chausse's fees connected with the execution to the extent they were reasonable as well as the storage fees of Pacific Movers. All of these fees were to be paid from the gross proceeds of the sale. Finally, Dahlby waived any objections he might have to this arrangement on the grounds that the arrangement did not comply with the law or procedure for execution sales. Dahlby reserved, however, any other objections he might have to defects under the writ of execution.

The sale was conducted, and over $45,000 was received. Following the sale, Guzzardi made a motion before the trial court to distribute the proceeds of the sale as follows:

| Payable To | Amount | Explanation |
|---|---|---|
| Guzzardi | $20,391 | Initial writ of execution |
| Guzzardi | 309 | Interest from issuance of writ to satisfaction of judgment |
| Guzzardi | 9,633 | Payoff to National Bank of its perfected and prioritized security interest in the inventory seized from Far North Traders, Inc. |
| Pacific Movers | 4,075 | Packing, moving, storage, security, cleaning of warehouse |
| Van Bowman Co. | 4,541 | 10% gross sales per stipulation |
| Advertising | 1,081 | |
| David Chausse | 2,514 | |
| TOTAL | $42,547[1] | |

1. Because these figures have been rounded, this total is not the exact sum of the amounts listed.

The excess proceeds were to be distributed to Dahlby. Dahlby filed an opposition to Guzzardi's motion for distribution. A hearing was held, and the trial court ordered distribution in accord with Guzzardi's motion. Dahlby appeals the trial court's ruling.[2]

## DISCUSSION

### I. DID THE TRIAL COURT ERR IN ALLOWING GUZZARDI TO BE REIMBURSED FOR PAYING OFF THE PRIOR SECURITY INTEREST OF FIRST NATIONAL BANK IN THE LEVIED GOODS?

The trial court allowed Guzzardi to be reimbursed for the $9,633 he paid to First National Bank of Fairbanks in payment of Dahlby's loan. Dahlby argues that it is improper to pay off a lien from the proceeds of an execution sale where the lien was not discharged by the sale. Since the bank lien was not discharged by the execution sale, Dahlby contends the proceeds should not have been used to reimburse Guzzardi for paying off the debt. Dahlby next argues that when Guzzardi paid off the bank loan Guzzardi received no assignment from the bank of its lien. Instead, Dahlby claims the evidence shows the bank merely released its security interest in the goods. Thus, Guzzardi had no lien against the proceeds of the execution sale and was not entitled to the $9,633. Finally, Dahlby argues that even if the bank had assigned its lien to Guzzardi, Guzzardi would have been required to follow the procedures delineated in Article 9 of the U.C.C. for seizing and selling the goods, which Dahlby contends was not done.

The trial court held that because Dahlby was benefited by Guzzardi's payment to the bank, Dahlby should reimburse Guzzardi. We agree.

Many courts have held that when one party pays another's debt in order to protect his own interest, that party takes the

rights of the original creditor despite the absence of a formal assignment of rights.

> The absence of a formal assignment is a gap that can be filled by restitution remedies in one form or another for the alternative is an unjust enrichment of the obligor that is both evident and determinate, being measured by the amount of the debt discharged....
>
> The most common and familiar instance is that of a junior mortgagee or other lienor who pays off and discharges a senior lien in order to protect his own security interest. The remedy awarded will usually be described as subrogation and will operate as an assignment substituting the intervenor for the paid-off creditor. Often courts prefer to describe the remedy as an equitable lien but the effect is the same since the lien will have the same rank as the paid-off lien.

Dawson, *The Self Serving Intermeddler,* 87 Harv.L.Rev. 1409, 1437–38 (1974).

American Jurisprudence 2d states the proposition as follows:

> The holder of a junior mortgage or encumbrance who pays or advances money to pay the debt secured by the prior mortgage or encumbrance is generally entitled to be subrogated to the rights of the senior encumbrancer, and express provision to this effect is sometimes made by statute. It must appear, of course, that the junior mortgagee claiming subrogation paid, or advanced money to pay, the prior encumbrance not as a mere volunteer, but for the protection of his own interest or the preservation of his security.

73 Am.Jur.2d *Subrogation* § 100 (1974) (footnotes omitted).

■ In the instant case, Guzzardi did not pay off the bank loan as a mere volunteer, but rather because of a demand from the bank for payment or surrender of the collateral. We hold that Guzzardi succeeded to the rights of the bank.

---

2. Throughout his brief, Dahlby makes reference to the fact that he believes the process server seized excess inventory in violation of the writ of execution. Dahlby, however, appeals only from the trial court's order with respect to the distribution of the proceeds. Therefore we only address the distribution issue.

Dahlby contends that even if Guzzardi were an assignee of the bank, Guzzardi failed to follow the requirements of Article 9 of the U.C.C. in seizing and selling the property pursuant to the bank lien. We find this argument unpersuasive. The inventory was seized and sold pursuant to the writ of execution, not the bank lien. Thus, the U.C.C. requirements, with respect to seizure and sale do not apply.

When the inventory was sold, pursuant to the writ of execution, the bank lien continued against the proceeds of the sale. AS 45.09.306(a), (b). Since Guzzardi held the bank lien, the trial court properly distributed the $9,633 to him.

## II. DID THE COURT ERR IN ORDERING DISTRIBUTION OF $2,514 IN COSTS TO THE PROCESS SERVER, CHAUSSE?

The court ordered distribution of $2,514 to the process server, Chausse. The amount broke down as follows:

| | |
|---|---|
| Posting of Levy | $ 26.00 |
| Inventory of Assets | 435.00 |
| Service of Exemption Notices | 26.00 |
| Posting Notice of Sale | 26.00 |
| Commission on Sale | 1,300.00 |
| Return of Service of Process | 26.00 |
| Security Service | 675.00 |
| TOTAL | $2,514.00 |

The $675 security service charge was to reimburse Chausse for amounts he paid to others. The remaining $1,839 was to pay for services Chausse provided.

### A. *Commission to Chausse*

Dahlby cites Administrative Rule 11 which establishes the maximum fee which may be recovered as costs under Civil Rule 79 for service of process. Rule 11(a)(2) states:

Sales of Property Pursuant to Final Process:

For advertising and disposing of property by sale, set-off, or otherwise, according to law, pursuant to a writ of possession, partition, execution, or any final process and for receiving and paying over money on account of property sold ... [schedule of percentage fees follows]

Dahlby argues that since the parties stipulated that a private auctioneer would conduct the sale, Chausse did not perform those steps for which Rule 11(a)(2) provides a commission. Rule 11, however, is not relevant to the dispute in this case. In the stipulation the parties entered into, Dahlby agreed to pay Chausse's fees to the extent reasonable. Dahlby specifically waived any objection that the procedure agreed to might not comply with the law or procedure for execution sales. Thus, Rule 11 is inapplicable. The only question before the trial court was whether the costs charged by Chausse were reasonable.

Rather than look at the breakdown of costs charged for Chausse's services, the trial court looked at the total charge of $1,839 to determine if it was reasonable. Chausse testified that he worked at least fifty-eight hours on the Dahlby matter. The work performed included posting the levies, taking and inventorying the goods seized, and cashing the checks received at the sale. Chausse also testified that his normal hourly rate was $35. The trial court noted that the $1,839 charged by Chausse worked out to be approximately $31 per hour. Based on this testimony, the court concluded that the amount charged by Dahlby for his services was reasonable.

We find that this ruling is not clearly erroneous and should thus be affirmed.[3]

### B. *The Charge for Inventorying*

Dahlby argues that the $435 charge for inventorying the goods was unnecessary, and even if it was necessary the amount charged was excessive. This $435 charge was included in the total fee of the $1,839 discussed above. Dahlby claims this charge is excessive in light of Administrative Rule 11(a)(5) which provides payment of $10.00 per hour for the taking of an inventory of unclaimed property. Further, Dahlby argues that the inventorying was

---

**3.** Findings of fact made by the trial court may not be set aside unless they are clearly erroneous. A finding is clearly erroneous if we have a definite and firm conviction that a mistake has been made." *Williams v. Alyeska Pipeline Serv. Co.,* 650 P.2d 343, 347 (Alaska 1982).

not necessary because the goods were immediately turned over to the moving and storage company who took care of the goods until the sale was complete.

We find Dahlby's argument to be meritless. Administrative Rule 11(a)(5) deals with inventories of unclaimed property. The inventory seized here was not unclaimed property. Furthermore, the parties agreed, as discussed above, to pay Chausse's reasonable costs. Thus, Administrative Rule 11(a)(5) is not relevant to this case. When the trial court determined that Chausse's fees were reasonable, it had already considered the inventory fee.

■ Dahlby's argument, that the inventory was unnecessary, is meritless. As Guzzardi notes in his brief, "[t]he goods seized in this case were hundreds of items of antique nature and the process server, David Chausse, took it upon himself to inventory the goods using the help of others so that there were adequate records of everything that was seized from the defendants. This inventory process was for the protection of all involved." We agree.

### C. The $675 Charge for Security Services

Dahlby objects to the payment of $675 to Chausse to reimburse him for payments he made to others for security services. Dahlby argues that this cost was unnecessary and unreasonable. Again, since the parties agreed to pay the reasonable costs of Chausse, we need only decide whether the trial court's ruling that these costs were reasonable was clearly erroneous.

■ Chausse, in unsworn testimony,[4] told the court that the security services provided during the auction were to insure that goods were not removed without payment. In addition, security was provided at the time of the seizure, and at all times the warehouse was open to the debtors, the Dahlbys, and to the auction company's employees. The trial court found this to be reasonable. This ruling is not clearly erroneous.

### III. SHOULD GUZZARDI OR THE PROCESS SERVER BE REQUIRED TO PAY FOR THE DAMAGE CAUSED TO DAHLBY'S INVENTORY?

Apparently after the goods were seized, several items of the inventory were damaged. According to Dahlby's wife, one of Chausse's employees told her that the moving company was responsible for the damage, and that the amount of the damage would be subtracted from the moving company's bill. The amount, however, was never deducted from the bill.

In his opposition to the motion for distribution, Dahlby objected to the damage not being subtracted from the costs. No mention, however, was made of the damage by any of the parties at the hearing on the matter and apparently the court did not address the issue.

Guzzardi argues that Dahlby waived this issue because he failed to raise it in his statement of points on appeal. Alaska Appellate Rule 210(e) provides: "[A]t the time of filing his notice of appeal, the appellant shall serve and file with this designation a concise statement of the points on which he intends to rely on the appeal. The appellate court will consider nothing but the points so stated." In *Mullen v. Christiansen*, 642 P.2d 1345, 1350 (Alaska 1982), we noted that we may still consider an issue even if not included in the statement of points on appeal if the issue was raised at trial and was adequately briefed.

■ In this case we find it appropriate to address this issue. Dahlby raised the objection in the opposition to the distribution and adequately briefed the issue before this court. Because the trial court failed to rule on this issue, however, it will be remanded to the trial court.

### IV. DID THE TRIAL COURT ERR IN CALLING DAVID CHAUSSE AS ITS OWN WITNESS?

Dahlby argues that it was improper for the trial court to have called Chausse as a

---

**4.** Any objection Dahlby may have had to Chausse's testimony not being under oath was waived as Dahlby failed to make an objection at that time. *M. v. Superior Court of Shasta County*, 4 Cal.3d 370, 93 Cal.Rptr. 752, 482 P.2d 664, 669 (1971).

witness. Dahlby argues that to the extent the court's findings have any evidentiary basis in the Chausse testimony, they should be rejected. Further, Dahlby argues that no other evidence as to the nature of the costs was submitted.

Evidence Rule 614 provides:

(a) Calling by Court. The court may call witnesses on its own motion or at the suggestion of a party, and all parties are entitled to cross-examine witnesses thus called.

(b) Examination by Court. The court may examine any witness.

(c) Objections. Objections to the calling or examination of witnesses by the court may be made at the time or at the next available opportunity when the jury is not present.

■ In this case, when the trial court called Chausse to testify, Dahlby raised no objection. Further, Dahlby was given an opportunity to cross-examine Chausse. Thus we find that the trial court committed no error with respect to Chausse's testimony.

AFFIRMED IN PART, REMANDED IN PART.

BURKE, Justice, dissenting in part.

I concur in all parts of the court's opinion except the decision, set forth in part III, to remand an issue not included in Dahlby's statement of points on appeal. While we are authorized to relax the requirements of Appellate Rule 210(e), when strict adherence to the rule will work surprise or injustice,[1] I see no reason to do so in the case at bar. Thus, I would affirm the trial court's judgment in all respects.

---

1. Appellate Rule 521 provides: "These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the appellate courts where a strict adherence to them will work surprise or injustice."